BURKE, Judge.
*98 R.V.D. was convicted of two counts of first-degree sodomy, a violation of § 13A-6-63(a)(3), Ala. Code 1975, and two counts of sexual abuse of a child less than 12 years old, a violation of § 13A-6-69.1, Ala. Code 1975. He was sentenced to life imprisonment without the possibility of parole for each of the sodomy convictions and to 20 years' imprisonment for each of the sexual-abuse convictions, all sentences to run concurrently. This appeal follows.
The evidence presented at R.V.D.'s bench trial indicated that he sodomized and sexually abused his granddaughter, P.P., over a period of approximately five years. P.P. testified about two specific incidents of abuse. The first incident P.P. testified about occurred "right before [her] third birthday." (R. 12.) P.P. stated that R.V.D. told her to "touch his tinkle spot with [her] hands" and that he did the same thing to her. (R. 12.) According to P.P., R.V.D. would get her to "rub it and stuff like that." (R. 13.) P.P. also testified that R.V.D. put his mouth on the same spot on her and would "lick it and stuff." (R. 14.) P.P. testified that she refers to her "private" as a "tinkle spot," and that a "private" is "where you use the bathroom from." (R. 18.) P.P. also testified that R.V.D. told her not to tell anyone what he had done "or else he would hurt [her]." (R. 16.)
P.P. went on to testify about a second incident in which the same thing happened. P.P. stated that when she was eight years old, she was at R.V.D.'s house and "Granny was sleeping, and [R.V.D.] was doing it to me, and he said that he would give me a honey bun if I did it to him." (R. 16.) According to P.P., she then went to her grandmother's room and told her what R.V.D. had done. P.P.'s grandmother relayed the allegations to P.P.'s mother, who reported the incident to police.
The State also introduced three letters R.V.D. wrote to various members of his family in which he acknowledged that he had abused P.P. and asked for forgiveness. (R. 42.) In a letter to P.P., R.V.D. stated: "I am so very sorry for what I did to you. I wish I could take it all back." (C. 88.) In the same letter, R.V.D. continued: "Each time I touched you I prayed for forgiveness and asked God to take away the temptation, but the next time we were together, I yielded again." (C. 88.)
In his defense, R.V.D. called Dr. Glen King, a forensic psychologist who testified regarding his evaluation of R.V.D. According to Dr. King, R.V.D. suffered from a condition called cardiovascular dementia. Dr. King opined that, although R.V.D. was competent to stand trial, he was unable to "understand the nature and quality of his actions and wrongfulness of his acts" at the time he abused P.P. The trial court was not persuaded; it found R.V.D. guilty of all charges.
I.
On appeal, R.V.D. argues that he did not knowingly and intelligently waive his right to a jury trial. However, R.V.D. did not first present this issue to the trial court. Therefore, it is not preserved for appellate review.
" 'Review on appeal is restricted to questions and issues properly and timely raised at trial.' Newsome v. State, 570 So.2d 703, 717 (Ala. Crim. App. 1989). 'An issue raised for the first time on appeal is not subject to appellate review because it has not been properly preserved and presented.' Pate v. State, 601 So.2d 210, 213 (Ala. Crim. App. 1992). ' "[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof." '
*99 McKinney v. State, 654 So.2d 95, 99 (Ala. Crim. App. 1995) (citation omitted). 'The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.' Ex parte Frith, 526 So.2d 880, 882 (Ala. 1987). 'The purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury.' Ex parte Works, 640 So.2d 1056, 1058 (Ala. 1994)."
Ex parte Coulliette, 857 So.2d 793, 794-95 (Ala. 2003).
Moreover, this argument is refuted by the record. Before trial, R.V.D. filed a "Motion to Waive Jury Trial" in which he specifically stated that it would be in his "best interest to be tried by the Judge in this matter." (C. 18.) Both R.V.D. and defense counsel signed the motion. Additionally, the following exchange occurred immediately before the trial began:
"THE COURT: [Defense counsel], it's my understanding that in this particular case that you have waived your client's right to a trial by jury and request that I try this case on a non-jury basis?
"[DEFENSE COUNSEL]: I have, Your Honor, and I've talked to my client at length about that also.
"THE COURT: All right. [R.V.D.], do you agree to not have a jury trial?
"[R.V.D.]: Yes, sir."
(R. 6.) Thus, the record refutes R.V.D.'s contention.
R.V.D. also contends that he did not knowingly and intelligently waive his right to testify in his own defense. R.V.D. notes that, in his pro se notice of appeal that was addressed to the circuit clerk, he asserted that he "was never able to say anything in [his] own defense." (C. 59.) However, this is not sufficient to preserve the issue for appellate review. Because the issue was not first presented to the trial court, it is not preserved for this Court's review. See Ex parte Coulliette, 857 So.2d at 794-95.
II.
R.V.D. also argues that his sentence of life imprisonment without the possibility of parole for each of his sodomy convictions is illegal. In its brief on appeal, the State concedes that a remand is necessary for the trial court to reconsider its sentences for R.V.D.'s sodomy convictions. (State's brief, at 14.) After reviewing the record, we agree that the trial court did not have the authority to sentence R.V.D. to life imprisonment without the possibility of parole for either of his sodomy convictions.
The record reveals that, after the trial court adjudicated R.V.D. guilty of each count of sodomy, the court made a finding that the acts occurred when "the child was less than six." (R. 107.) The trial court went on to sentence R.V.D. as follows: "With regard to the two sodomy counts, the Court, by statute, can only impose one penalty, which is life without parole." (R. 107.) Nothing in the record suggests that R.V.D. was being sentenced pursuant to the Habitual Felony Offender Act. Thus, the only statute that could potentially authorize that sentence is § 13A-5-6(d), Ala. Code 1975, which provides:
"In addition to any penalties heretofore or hereafter provided by law, in all cases where an offender is convicted of a sex offense pursuant to Section 13A-6-61, 13A-6-63, or 13A-6-65.1, when the defendant was 21 years of age or older and the victim was six years of age or less at the time the offense was committed, the defendant shall be sentenced to life imprisonment *100 without the possibility of parole."
As noted, P.P. testified about two specific instances in which R.V.D. sodomized her. P.P., who was 10 years old at the time of trial, testified that her birthday was June 12, 2007. (R. 19.) According to P.P., the first instance of sodomy happened "right before [her] third birthday." (R. 12.) Thus, the first incident would have occurred prior to June 12, 2010. However, subsection (d) of the above-mentioned statute, the provision under which R.V.D. was sentenced, was not added to § 13A-5-6, Ala. Code 1975, until that statute was amended in 2011. See Ala. Acts 2011, Act No. 2011-555, p. 1037, § 1. The Act was approved by the governor on June 9, 2011, and became "effective on the first day of the third month following its passage and approval by the Governor, or its otherwise becoming law."
Thus, in 2010, when, according to P.P.'s testimony, the first instance of sodomy occurred, § 13A-5-6, Ala. Code 1975, contained no provision under which R.V.D. could be sentenced to life imprisonment without the possibility of parole. " 'A defendant's sentence is determined by the law in effect at the time of the commission of the offense.' " Holley v. State, 212 So.3d 967, 969 (Ala. Crim. App. 2014), quoting Davis v. State, 571 So.2d 1287, 1289 (Ala. Crim. App. 1990). As it existed at the time of R.V.D.'s first sodomy offense, § 13A-5-6(a)(1), Ala. Code 1975, provided that a Class A felony such as first-degree sodomy, see § 13A-6-63(b), Ala. Code 1975, was punishable by imprisonment "for life or not more than 99 years or less than 10 years." Accordingly, the trial court was not authorized to sentence R.V.D. to life imprisonment without the possibility of parole for that particular count of first-degree sodomy.
As to R.V.D.'s second sodomy conviction, the record reveals that, on direct examination, the State asked P.P. how old she was when the second incident occurred. P.P. replied: "Because it was when I was eight, and it was right before I told." (R. 17.) Thus, as to that particular instance of sodomy, the record refutes the trial court's finding that the victim was less than six years of age when it occurred.
It is well settled that, "under the Sixth Amendment, any fact (other than a prior conviction) that exposes a defendant to a sentence in excess of the relevant statutory maximum must be found by a jury, not a judge[1 ], and must be established beyond a reasonable doubt, not merely by a preponderance of the evidence." Lightfoot v. State, 152 So.3d 445, 448 (Ala. 2013), citing Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). As noted, first-degree sodomy is a Class A felony punishable by imprisonment "for life or not more than 99 years or less than 10 years." § 13A-5-6(a)(1), Ala. Code 1975. Thus, a sentence of life imprisonment without the possibility of parole exceeds the maximum penalty authorized by law.
Section 13A-5-6(d), Ala. Code 1975, requires that, for the imposition of a sentence of life imprisonment without the possibility of parole, the offender be 21 years of age or older and the victim be "six years of age or less at the time the offense was committed." Under Apprendi, the State was required to prove those facts beyond a reasonable doubt. The record contains no evidence indicating that P.P. was under *101 the age of six when the second incident of sodomy occurred. This Court has held:
" ' " 'Where evidence is presented to the trial court ore tenus in a nonjury case, a presumption of correctness exists as to the court's conclusions on issues of fact; its determination will not be disturbed unless clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence.' " ' Ex parte Jackson, 886 So.2d [155] at 159 [ (Ala. 2004) ], quoting State v. Hill, 690 So.2d 1201, 1203 (Ala. 1996), quoting in turn Ex parte Agee, 669 So.2d 102, 104 (Ala. 1995)."
Washington v. State, 922 So.2d 145, 158 (Ala. Crim. App. 2005).
Because there was no testimony establishing that P.P. was six years of age or less when the second incident of sodomy occurred, the trial court's finding in that regard is without supporting evidence. Accordingly, § 13A-5-6(d), Ala. Code 1975, did not apply to that particular conviction. Therefore, R.V.D.'s sentence of life imprisonment without the possibility of parole as to that count of first-degree sodomy is not authorized by law.
R.V.D. did not raise either of these issues at trial or in a postjudgment motion. However, " '[m]atters concerning unauthorized sentences are jurisdictional.' Hunt v. State, 659 So.2d 998, 999 (Ala. Crim. App. 1994). Therefore, this Court may take notice of an illegal sentence at any time. Pender v. State, 740 So.2d 482, 484 (Ala. Crim. App. 1999)." Holley v. State, 212 So.3d at 968-69. Because R.V.D.'s sentences of life imprisonment without the possibility of parole are illegal, this Court must reverse those sentences and remand the case with instructions that R.V.D. be resentenced accordingly.
We note that R.V.D. does not challenge the sufficiency of the evidence as to any of his convictions and that he did not make a motion for a judgment of acquittal at trial. His arguments relate only to the trial court's specific findings regarding the age of the victim when one offense occurred and the date on which the other offense occurred. Thus, his convictions are due to be affirmed.
III.
Finally, R.V.D. argues that he was sentenced in violation of Rule 26.9(b), Ala. R. Crim. P., which provides, in pertinent part: "In pronouncing sentence, the court shall ... [a]fford the defendant an opportunity to make a statement in his or her own behalf before imposing sentence." R.V.D. asserts, and the State agrees, see State's brief, at 14-16, that the trial court failed to follow this provision. After reviewing the record, we agree that R.V.D. was not given an opportunity to speak on his behalf before his sentences were imposed. See (R. 107-110.)
Although R.V.D. did not object at trial, this Court has held that such matters are an exception to the general rules of preservation. In Green v. State, 200 So.3d 677, 678-79 (Ala. Crim. App. 2015), we noted:
"This Court has previously held, however, that 'the requirement that the defendant be afforded the opportunity to speak on his or her behalf at the sentencing hearing [is an] exception[ ] to the general preservation rule and [is] required to afford a defendant the minimal due process.' Banks v. State, 51 So.3d 386, 392 (Ala. Crim. App. 2010). Accordingly, this issue is properly before this Court for review.
" 'Rule 26.9(b)(1), Ala. R.Crim. P., provides that, in pronouncing the sentence, the circuit court must "[a]fford the defendant an opportunity to make a statement in his or her own behalf *102 before imposing sentence." In Banks, 51 So.3d at 393, this Court noted:
" ' "[R]egarding the requirement of an allocution, Ex parte Anderson, 434 So.2d 737 (Ala. 1983), and the cases following it hold that when the lack of an allocution or the waiver of allocution is raised on direct appeal remand is required because a sentence without an allocution is erroneous. See Davis v. State, 747 So.2d 921, 925 (Ala. Crim. App. 1999) ; Newton v. State, 673 So.2d 799, 800-01 (Ala. Crim. App. 1995) ; Burks v. State, 600 So.2d 374, 382-83 (Ala. Crim. App. 1991) ; Duncan v. State, 587 So.2d 1260, 1264 (Ala. Crim. App. 1991) ; Cline v. State, 571 So.2d 368, 372 (Ala. Crim. App. 1990) ; Maul v. State, 531 So.2d 35, 36 (Ala. Crim. App. 1988). See also Ebens v. State, 518 So.2d 1264, 1269 (Ala. Crim. App. 1986) ; Oliver v. State, 25 Ala. App. 34, 34, 140 So. 180, 181 (1932) (wherein the court noted that 'to constitute a valid judgement[, the fact that the defendant was asked if he had anything to say why the sentence of law should not be pronounced upon him] must appear in the minute entry of the judgment'). We note that in Shaw v. State, [949 So.2d 184 (Ala. Crim. App. 2006) ], this Court recognized and reiterated that on direct appeal, when the issue of the lack of an allocution or a waiver of an allocution is raised, the case is to be remanded. 949 So.2d at 187. Rule 26.9(b)(1) [, Ala. R. Crim. P.,] also provides that in pronouncing the sentence, the trial judge must '[a]fford the defendant an opportunity to make a statement in his or her own behalf before imposing sentence.' The Committee Comments following Rule 26 state that a defendant is entitled to allocution, regardless of the gravity of the sentence imposed. See Rule 26.9, Ala. R. Crim. P., Committee Comments." '
" Thompson v. State, 92 So.3d 801, 805 (Ala. Crim. App. 2011)."
Because R.V.D. was not given an opportunity to speak on his own behalf before sentence was pronounced, this Court must reverse R.V.D.'s sentences and remand the case with instructions that the trial court resentence R.V.D. and conduct a sentencing hearing in which a proper allocution is provided pursuant to Rule 26.9(b), Ala. R. Crim. P.
Conclusion
For the foregoing reasons, R.V.D.'s convictions for first-degree sodomy and sexual abuse of a child less than 12 years old are affirmed. However, the judgment is reversed as to each of his sentences, and this case is remanded with instructions that the trial court resentence R.V.D. in compliance with Rule 26.9(b), Ala. R. Crim. P. As to R.V.D.'s two sentences of life imprisonment without the possibility of parole, the trial court is instructed to resentence R.V.D. in compliance with Part II of this opinion. The trial court is directed to make a return to this Court showing compliance with these instructions within 49 days from the date of this opinion. The record on return to remand shall include a transcript of the sentencing hearing.
AFFIRMED AS TO CONVICTIONS; AND REVERSED AND REMANDED AS TO SENTENCES.*
Welch and Kellum, JJ., concur. Windom, P.J., concurs in the result. Joiner, J., concurs in part and concurs in the result, with opinion.
JOINER, Judge, concurring in part and concurring in the result.
*103 I concur in the Court's judgment affirming R.V.D.'s convictions. As to the Court's judgment reversing R.V.D.'s sentences, I concur in part and concur in the result.
I agree with the Court's reversal of R.V.D.'s sentences on the basis that R.V.D. was not "afforded the opportunity to speak on his ... behalf at ... sentencing." Banks v. State, 51 So.3d 386, 392 (Ala. Crim. App. 2010). As the Court notes, the lack of an allocution is a matter that may be raised for the first time on direct appeal.
I agree with the Court's reversal of R.V.D.'s sentences for his sodomy convictions, but, for the reasons expressed in my special writing in Hall v. State, 223 So.3d 997 (Ala. Crim. App. 2016), I do not agree that R.V.D.'s contention that the sentences are unauthorized is a "jurisdictional" claim. Rather, the claim is one "not subject to the ordinary rules of preservation and waiver" and, thus, may be raised for the first time on direct appeal. See Hall, 223 So.3d at 988 (Joiner, J., concurring specially) ("[A]lthough a claim on direct appeal that the circuit court imposed an unauthorized sentence has been described as 'jurisdictional' in some cases-particularly before Ex parte Seymour [, 946 So.2d 536 (Ala. 2006) ] -such a claim is more properly characterized as not being subject to the ordinary rules of preservation and waiver on direct appeal.").

As noted, R.V.D. waived his right to a trial by jury. Thus, the trial court was the factfinder in the present case.
*Note from the reporter of decisions: On August 3, 2018, on return to remand, the Court of Criminal Appeals affirmed, without opinion.